[Civil No. 1858. Filed December 10, 1921.]

[202 Pac. 401.]

TOWN OF FLAGSTAFF, a Municipal Corporation, McLEAN & WALSH, a Partnership Composed of NEAL McLEAN and WILLIAM D. WALSH, and NEAL McLEAN and WILLIAM D. WALSH, as Individuals, Appellants, v. VICTOR GOMEZ, Appellee.

1. APPEAL AND ERROR — FILING OF BOND JURISDICTIONAL WHERE APPELLANT IS REQUIRED BY LAW TO FURNISH BOND.—Under Civil Code of 1913, paragraphs 1234, 1236, 1237, an appeal is not perfected and the jurisdiction of the appellate court does not attach until notice has been given and a bond has been filed within the proper time in those cases where the appellant is required by law to furnish a bond, and the giving of the notice without the filing of a bond confers on the court merely the jurisdiction to dismiss the appeal.

2. APPEAL AND ERROR — THAT SUFFICIENT APPEAL BOND IS GIVEN BY ONE DEFENDANT DOES NOT CONFER JURISDICTION ON APPELLATE COURT TO REVIEW JUDGMENT AGAINST CODEFENDANTS WHO HAVE NOT GIVEN REQUIRED BOND.—That one defendant appealing from the judgment for plaintiff against all the defendants has given a sufficient bond does not give the appellate court jurisdiction to review the judgment against codefendants who have given notice of appeal, but have failed to file the required bond, regardless of whether the defendants are appealing jointly or separately.

3. MUNICIPAL CORPORATIONS — EXPRESS POWER TO SUE AND BE SUED— IMPLIED AUTHORITY TO EXECUTE APPEAL BONDS.—A city authorized by its charter to sue and be sued has implied authority to execute an appeal bond.

4. MUNICIPAL CORPORATIONS—COMPLAINT HELD TO CHARGE SEWER CONTRACTORS WITH DUTY TOWARD CHILD WHO FELL IN UNGUARDED EXCAVATION IN WIDELY USED STREET.—Complaint alleging that sewer contractors, while constructing sewer under contract with city, negligently left manhole six feet deep open and wholly unprotected for a period of more than thirty days, though situated in a street constantly used by the public, that the manhole became filled with water from heavy rains, and that, while the "excavation was open, exposed, and without any protection and full of water," plaintiff's fifteen months old daughter "fell in . . . and was immediately drowned therein," *held* to state a cause of action as

against contention that it did not charge defendants with a duty toward plaintiff and his child and plead the breach thereof, being sufficient to show duty to protect the public from the danger created by the excavation made by them.

5. MUNICIPAL CORPORATIONS—SEWER CONTRACTORS MUST PROTECT PUBLIC FROM EXCAVATION MADE IN CONSTANTLY USED STREET.—Sewer contractors, having made excavation in widely used streets, were required to protect the public from the danger thereof by warning the people using the street of the presence of the excavation or by covering the opening so as to prevent persons from falling in.

6. MUNICIPAL CORPORATIONS — CITY'S OBLIGATION TO PROTECT EXCAVATIONS IN STREETS DID NOT RELIEVE SEWER CONTRACTORS FROM GUARDING EXCAVATION.—The fact that the city was required to protect excavations in its streets did not relieve sewer contractors required by their contract to perform the work in a reasonably safe manner of the duty of protecting excavation in constantly used street to prevent people from falling therein.

7. MUNICIPAL CORPORATIONS—ALLEGATION THAT CHILD "FELL" IN EXCAVATION HELD TO SHOW NEGLIGENCE IN LEAVING EXCAVATION UNGUARDED PROXIMATE CAUSE OF CHILD'S DEATH.—Allegation that child "fell" in excavation left unguarded by sewer contractors *held* sufficient to show that the contractors' negligence in leaving excavation unguarded was the proximate cause of the child's death.

8. MUNICIPAL CORPORATIONS — WHETHER FAILURE TO GUARD MANHOLE WAS PROXIMATE CAUSE OF CHILD'S DEATH HELD FOR JURY.—In action for death of fifteen months old child in manhole left unguarded by defendant sewer contractors, evidence that the manhole was left unguarded, and that the child was seen near the manhole alone almost immediately before it was discovered in manhole, with nothing to suggest that a passing vehicle might have knocked it accidently into the manhole or that some other child might have pushed it in while playing, *held* sufficient for submission to jury of whether the contractors' failure to protect the opening was the proximate cause of the child's death.

9. NEGLIGENCE—"PROXIMATE CAUSE" DEFINED.—A "proximate cause" is a cause without which the accident would not have happened.

10. NEGLIGENCE—PARENTS' NEGLIGENCE IMPUTABLE TO CHILD.—Negligence of parents will not be imputed to a child to defeat an action for the benefit of the child nor when in behalf of its estate where there are beneficiaries other than the parents, but will be so imputed where the parents are the beneficiaries, though the action is nominally for the benefit of the estate of the deceased child.

10. Negligence of parent as imputable to child of tender years, notes, 1 Ann. Cas. 216; 7 Ann. Cas. 244; 11 Ann. Cas. 686; Ann. Cas. 1912D, 521.

11. DEATH—NEGLIGENCE OF PARENTS DEFENSE TO ACTION FOR CHILD'S DEATH.—In action by a father for death of child, the negligence of the parents was a good defense where parents were the sole heirs of the child under Civil Code of 1913, paragraph 1091.

12. PLEADING — REFUSAL TO PERMIT AMENDMENT OF ANSWER BEFORE COMMENCEMENT OF TRIAL ERROR.—Under Civil Code of 1913, paragraph 422, refusal to permit defendants to amend answer so as to plead a good defense before commencement of the trial *held* error, since court's discretion to allow or refuse the filing of an amended pleading can only be exercised after the trial has begun.

APPEAL from a judgment of the Superior Court of the County of Coconino. J. E. Jones, Judge. Appeal of Town of Flagstaff dismissed. Judgment against McLean & Walsh, a partnership, and McLean and Walsh, as individuals, reversed and case remanded as to them.

Mr. Francis D. Crable, for Appellant, Town of Flagstaff.

Mr. Richard E. Sloan, Mr. C. R. Holton, Mr. Greig Scott, and Messrs. Ford & Bodkin, for Appellants McLean & Walsh, a Partnership, and McLean and Walsh, as Individuals.

Messrs. Townsend, Stockton & Drake, for Appellee.

McALISTER, J.—Victor Gomez brought this action as the father of Victoria Gomez, his fifteen months old child, against the town of Flagstaff, a municipal corporation, McLean & Walsh, a partnership composed of Neal McLean and William D. Walsh, and Neal McLean and William D. Walsh as individuals, and recovered judgment for $12,875. From this judgment and the order denying a motion for a new trial two separate notices of appeal were given, one by the town of Flagstaff and the other by the remaining defendants, but only the latter—that is, McLean & Walsh, a partnership, and Neal McLean and

William D. Walsh as individuals—pursued their appeal by filing the required bond, and for the failure of the town of Flagstaff in this particular appellee moves the dismissal of its appeal.

Except in cases where the appellant is not required by law to furnish bond, an appeal is taken by giving notice thereof and filing a bond within the proper time, and it is deemed perfected, and the jurisdiction of this court attaches only after both of these requirements have been complied with. Paragraphs 1234, 1236, and 1237, Rev. Stats. 1913 (Civ. Code); *Thomas* v. *Speese,* 14 Ariz. 556, 132 Pac. 1137; *Inspiration Consolidated Copper Co.* v. *Mendez,* 19 Ariz. 151, 166 Pac. 278, 1183. The giving of the notice without pursuing the appeal to the extent of filing the bond when one is required confers on 'this court no jurisdiction to consider the merits, but only the power to enter an order of dismissal. *Dean* v. *Territory,* 13 Ariz. 152, 108 Pac. 476; *Young Construction Co.* v. *Ruth Gold Mines Co. et al.,* 14 Ariz. 518, 131 Pac. 1045; *Rothlisberger* v. *Hamblin,* 15 Ariz. 274, 138 Pac. 14; *Town of Yuma* v. *Winn,* 17 Ariz. 92, 148 Pac. 286; *Consolidated School District* v. *Enge,* 17 Ariz. 559, .155 Pac. 301.

Appellant town of Flagstaff claims, however, that inasmuch as the amount of the bond on appeal was, pursuant to the statute, fixed by the clerk of the superior court at a sum that insures the repayment of appellee's costs in case of affirmance of his judgment, the giving by one of the appellants of the bond required fulfills the purpose of the statute, and renders useless the furnishing of another bond by the other defendant, guaranteeing the same costs. If it could be correctly contended that there is only one appeal, it is not apparent how compliance with the statute on appeal by one appellant could confer on this court jurisdiction to review the judgment against

an appellant who has failed to comply therewith, even though they were codefendants, in view of the statutory requirement and its construction in the cases just cited. But the record discloses that separate appeals were taken; that is, that McLean & Walsh, a partnership, and Neal McLean and William D. Walsh, as individuals, perfected their appeal, and thereafter filed their abstract of record and briefs; that the town of Flagstaff attempted to appeal by giving notice thereof, paying the required filing fee and joining in the brief filed by the other appellants, but failed to give the bond and file an abstract of record, though in the joint briefs it makes use of the one filed by the other appellants. The cases were separately docketed in this court, and the appellee required to pay a filing fee in each. Hence it is evident that the bond given, which is an agreement to answer for the default of appellants McLean & Walsh, a partnership, and Neal McLean and William D. Walsh as individuals, does not secure the costs of appellee in the attempted appeal of the town of Flagstaff. Practically the same situation was before the court in the case of *Turner* v. *Franklin,* 10 Ariz. 188, 85 Pac. 1070. Judgment had been entered against the sheriff, Turner, and his surety, the United States Fidelity & Guaranty Company. The former gave notice of appeal, but filed no bond, while the latter petitioned for a writ of error and gave a *supersedeas* and cost bond. In disposing of the attempted appeal of Turner the court said:

"By reason of there being no bond filed by Turner or on his behalf, this court does not obtain any jurisdiction over him or his interests in the case. The determination of this question will therefore be had relative to the rights and interests of the guaranty company alone."

Had the town of Flagstaff desired to unite with the other defendants in the appeal, it could have done so by joining in the undertaking. The rule is stated thus in 3 Corpus Juris, 1114:

"As a general rule, where two or more persons appeal or bring error severally from or to a judgment, order, or decree, they must each file a bond or undertaking for the amount required by the statute. But two or more defendants may unite in appealing or bringing error in a proper case, and perfect such appeal by joining in a single bond or undertaking. In such case all the appellants or plaintiffs in error must join in the bond or undertaking, and it must be so worded as to bind them, or each must give a bond or undertaking, in the absence of statutory provision to the contrary, and the wording of the condition must be such as to bind the sureties as to all."

It is contended further that it is questionable if the town of Flagstaff can execute a bond, inasmuch as the power is neither expressly given by its charter nor fairly implied from the terms thereof. Every municipal corporation in this state by the express terms of the general law under which it was organized "may sue and be sued, plead and be impleaded, defend or be defended, in all courts in all actions whatsoever." The power to do every act required to prosecute or defend an action to which it is a proper party in both the trial and appellate courts is necessarily implied in this language. The execution of a bond on appeal is merely an incident of its power to sue and be sued. If this were not true, a municipal corporation brought into the trial court to defend an action would be in this unenviable and unfair situation, powerless to appeal from an adverse judgment, whether properly or improperly entered, yet compelled at the instance of the adverse party, to uphold in the Supreme Court a judgment in its favor. The mere statement of the proposition is sufficient

to show the fallacy of the contention that the town of Flagstaff cannot execute a bond on appeal. The motion to dismiss its appeal, therefore, for its failure in this respect is granted, and the merits of the questions presented by the appeal of the other appellants only will be determined.

The overruling of a general demurrer to the complaint is assigned as error, appellants contending that it should have been sustained because the complaint fails to state a cause of action for damages resulting from negligence in that it does not "charge a duty of defendants toward plaintiff or said decedent, the breach, and the resulting damages." A reading of the complaint discloses these facts: That the town of Flagstaff, a municipal corporation, entered into a contract in writing with McLean & Walsh, a partnership composed of Neal McLean and William D. Walsh, residents of Los Angeles, California, for the construction of a sewer system in said town of Flagstaff, and, among others, on a street known as O'Leary Avenue, a common thoroughfare used by the residents of said town and others; that said defendants, pursuant to said contract, began excavation on said O'Leary Avenue prior to July 1, 1919, and ceased said work on July 2, 1919, when it consisted of a ditch along the north side of said street more than six feet in depth and a large manhole of the same depth and more than four feet in width directly in front of and about forty feet from the home of Victor Gomez which said ditch and manhole were negligently left open and wholly unprotected by any means whatsoever from the second day of July, 1919, until about the twentieth day of August, 1919; that after the second day of July, 1919, and prior to the sixteenth day of August, 1919, heavy rains fell in the town of Flagstaff, and the said sewer ditch and manhole became filled with water, and so remained for more than

thirty days prior to said last-mentioned date; that on said sixteenth day of August, 1919, between the hours of 5 and 6 P. M., Victoria Gomez, the fifteen months old daughter of plaintiff and Santa Gomez, a child of tender years, and without understanding and mental capacity to appreciate any danger in the sewer ditch or manhole aforesaid, though perfectly normal mentally and physically, and "while said sewer ditch and excavation was open, exposed, and without any protection and full of water, . . . fell in the said sewer ditch, excavation, or manhole, and was immediately drowned therein"; that the laws of the state and the town of Flagstaff required said town to keep its streets in good order and to protect properly any excavations made therein.

In view of these allegations it cannot be said that a duty from appellants toward appellee and his child, Victoria Gomez, and the breach thereof, is not charged. It is true that such duty is not set out *in haec verba,* but it follows inevitably from the facts which are alleged. In the performance of their contract appellants excavated in O'Leary Avenue a ditch and manhole over six feet in depth, and it is self-evident that an opening of this character in a street constantly used by the public, without something to warn people of its presence, or a covering sufficient to prevent those unwarned from falling into it, was dangerous to those passing that way; and the fact that such excavations remained wholly unprotected and full of water from the rains for a period of more than thirty days made the danger very much greater. It was clearly the duty of those responsible for such condition to minimize as much as possible the dangers of it by warning in some manner people using that street of its presence, or by covering the opening or in some other appropriate method preventing the likelihood of one's falling in. Their duty in this respect

was to the public, or, more accurately speaking, that part of the public chancing to pass along this section of O'Leary Avenue, which necessarily included the plaintiff and his child, Victoria Gomez, who lived on it and actually did pass over it to the unprotected manhole. The fact that the law required the town of Flagstaff to protect properly excavations in its streets did not relieve appellants from the performance of this duty when it was required of them by the implied, if not expressed, terms of their contract to perform the work called for thereby in at least a reasonably safe manner. A duty devolving upon one person under contract is not excused in him by the mere fact that the law enjoins the same duty upon another, and there is no allegation that appellants were released from their obligation in this respect by the terms of the agreement with the town. The omission, therefore, to protect the openings was a breach of appellants' duty to the plaintiff and the child, Victoria Gomez, for which they are liable if damages resulted proximately therefrom, but appellants contend that the complaint does not allege that damages did so result, because it does not appear therein that such omission was the proximate cause of the child's death.

According to the facts pleaded, the child fell into the sewer ditch or manhole while it was open, exposed, without any protection, and full of water, and was immediately drowned therein. The word "fell," as here used, signifies that the child descended into the manhole by force of gravity and excludes the idea of being thrown, pushed, or knocked in. It implies no suggestion or intimation whatever of the application of an extrinsic force causing the child to lose its balance and pass downward in obedience to the law of gravity. If it had been intended by the pleader to convey the idea that the child's being in the manhole was the result of something other than the presence

in the street of the hole itself, some word other than "fell," as descriptive of its manner of getting therein, would necessarily have been used. So, when it is stated that fifteen months old Victoria Gomez fell into the manhole while it "was open, exposed, and without any protection," there is conveyed, not merely the fact that it fell in some time during the six weeks the excavation remained unprotected but the idea as well that the exposed and unprotected condition of the manhole was the cause thereof. It appears, therefore, from the facts alleged, that the negligent omission to protect the water-filled excavation was the real, efficient, and proximate cause of the child's death. The demurrer was properly overruled.

It is next complained that the evidence submitted does not establish a right of recovery against the defendants. The question was raised first at the close of plaintiff's case by motion for a directed verdict, and again in the motion for a new trial. It is argued that proof of the negligent omission to protect the excavation or manhole and of the death therein by drowning are not of themselves sufficient to establish the one as the proximate cause of the other. This is true, but, in addition to proof of the facts substantially as alleged, the evidence discloses that about ten or twelve minutes before the child's body was discovered by its mother it was seen playing in the sand in its yard near the back gate, and that about 5:20 or 5:30 a neighbor passed it in the street practically halfway between the front gate of its yard and the excavation, that its mother took it from the manhole while its body was still warm, and that in attempting to resuscitate it water ran from its mouth and nose. No one, it is true, saw it fall in, but the fact that it was seen in the street near the manhole alone almost immediately before that and found a very few minutes afterwards, with nothing to suggest, even remotely,

23 Ariz.—13

that a passing vehicle might have knocked it in acci-
dentally or some other child pushed it in while play-
ing, in connection with the other evidence in the case,
leads to the conclusion that the child, too small to ap-
preciate danger, while walking along or across the
street, fell in the water because of the unprotected
excavation. And, since "that cause is proximate
without which the accident would not have happened"
(*Inspiration Consolidated Copper Co.* v. *Conwell,* 21
Ariz. 480, 190 Pac. 88), the facts justified submitting
to the jury the question whether the negligent omis-
sion to protect the excavation was the proximate
cause of the child's death, for "proximate cause is a
question of fact for the jury and may be inferred
from circumstantial evidence if it is substantial."
*Arizona Binghampton Copper Co.* v. *Dickson,* 22 Ariz.
163, 195 Pac. 538.

Appellants contend, however, that the jury should
have had submitted to it also the carelessness and
negligence of the parents in watching over and caring
for the child as the proximate cause of its death, and
that, if they had been permitted at the opening of
the trial to file an amended answer containing such
allegation which was then offered, this matter would
have been before it. The ruling denying them per-
mission to amend in this respect their answer, then
consisting only of a general denial, a demurrer having
been previously overruled, is objected to upon the
ground that they were entitled as a matter of right
to amend any time before trial, and the proposed
amendment would have been a good defense to the
action. Regardless of the question of the proper ex-
ercise of the court's discretion to permit or refuse an
amendment on the eve of trial after the cause had
been set for a number of days and a jury was present
ready to be impaneled, a determination of the merits
of the amendment offered as a defense will disclose

whether appellants were injured by the ruling. If it be true that the child's being near the dangerous excavation was the result of the negligence of its parents, would such negligence be imputed to it and preclude the recovery from appellants of damages for its death resulting from their negligence? By the great weight of authority the negligence of the parents in exposing a child *non sui juris* to danger is not imputed to the child so as to preclude its right of action against a third person by whose negligence it is injured. This rule was announced by the Supreme Court of Vermont as far back as 1850 in the case of *Robinson* v. *Cone,* 22 Vt. 213, 54 Am. Dec. 67, and since that time has been consistently followed by a large number of jurisdictions, notwithstanding the Supreme Court of New York, in the case of *Hartfield* v. *Roper,* 21 Wend. 615, 34 Am. Dec. 273, had held in 1839 that the negligence of the parents was imputed to the child, preventing recovery by the latter, which ruling was followed in some states for a number of years. But "nearly all of the decisions in the other states since 1892 have followed what would seem to be the better rule, viz., that the negligence of a parent or custodian is not imputable to a child *non sui juris,* in an action brought for the child's own benefit." Note to *Neff* v. *Cameron,* page 320 of 18 L. R. A. (N. S.) In refusing to follow longer in that state the doctrine of imputed negligence, the Supreme Court of Minnesota in *Mattson* v. *Minnesota etc. R. R. Co.,* 95 Minn. 477, 111 Am. St. Rep. 483, 5 Ann. Cas. 498, 70 L. R. A. 503, 104 N. W. 443, gave the following very persuasive reasons for reversing a former decision of that court in which the doctrine had been applied:

"The right of an infant to damages for injuries to his person caused by the wrongful act of others is a property right, and entitled to the same protection in

the courts as is accorded other property held or owned by him. He is entitled to the protection of the law equally with persons who have attained their majority, and to refuse him relief on the ground of his parents' indifference or negligence would be to deny it to him. To impute to him negligence of others is harsh in the extreme, whether the negligence so imputed be that of his parents, their servants, or his guardian. He is a citizen within the meaning of the law of the land, and entitled to such rights and privileges as are appropriate to his class, and to the equal protection of the law.''

To the same effect is the following from Judge Thompson in his work on negligence, page 294, volume 1, which is quoted with approval in 29 Cyc. 555:

''That it should be adhered to in any enlightened jurisdiction with respect to children is a reproach to the judges who uphold it. An adult person, when he commits his person to the custody of another, does so at least voluntarily; an infant does not select his custodian; it is selected for him by the laws of nature, or by circumstances beyond his control. Certainly there is no reason why the ordinary principle that, where one is injured by the concurring negligence of two persons, he has an action against either or both, should not apply in the case of an injury to a child, unless the imputation is to be put upon the law of denying to feeble and helpless infancy the same measure of protection which it accords to adults. Such a conception is cruel, heartless, and wicked. It can only hold in jurisdictions where property is placed above humanity.''

We are clearly of the opinion that imputed negligence should not be allowed to defeat an action for the benefit of the child, nor one in behalf of its estate where there are beneficiaries other than those whose negligence contributed to its death. The reasons for this rule, however, fail where the action, though nominally for the benefit of the estate, is in reality in the interests of the beneficiary thereunder, whose

negligence contributed to the accident resulting in the death, and to deny the defense of imputed negligence where this is true would be equivalent to permitting one to profit by his own wrong. If such beneficiary were suing for an injury to himself, he could not recover if he contributed to it, and there is no reason why the same rule should not prevail when the action is based upon an injury to another to which he contributed, and he alone will reap whatever harvest is gathered from a termination of the suit in favor of the estate. He would profit just as much from his own wrong in the latter instance as in the former, and the fact that, under paragraph 3373 of the Revised Statutes of 1913 (Civil Code) and its construction in *Southern Pacific Co.* v. *Wilson,* 10 Ariz. 162, 85 Pac. 401, the action is in behalf of the estate, renders it no less true that it is, in reality, for the benefit of those to whom the estate will be distributed, the beneficiaries, the statute providing that whatever is recovered shall not be subject even to the debts and liabilities of the deceased. To hold otherwise is to forsake the substance in pursuit of the shadow. This is in accordance with the holding in most jurisdictions, and the rule is thus announced in 29 Cyc. 555, where a list of authorities sustaining it may be found:

"While in most jurisdictions negligence of parents or others *in loco parentis* cannot be imputed to a child to support the plea of contributory negligence when the action is for his benefit, yet, when the action is by the parent in his own right or for his benefit, as when he sues as administrator, but is also the beneficial plaintiff or *cestui que trust* of the action as distributee of the child's estate, the contributory negligence of the parent may be shown in evidence in bar of the action, and this although the action is brought by one parent and the negligence was that of the other."

It is the negligence of the parents, both of whom are living, that is sought to be imputed in this case,

and under paragraph 1091 of the Statutes of 1913 (Civil Code) they are the sole heirs of their fifteen months old child. We think, therefore, without suggesting or even intimating that the evidence is suffi-cient to establish it, that the appellants should have been permitted to place before the jury their defense of imputed negligence, for, if they had been allowed to do so and could have persuaded the jury that it was the proximate cause of the child's death, they would have been entitled to a verdict in their favor.

The brief of counsel for appellee is directed on this assignment only to the question of the sufficiency of imputed negligence as a defense. I take it that the ruling refusing permission to amend in this respect was based upon the court's judgment that the defense offered, if true in fact, would not avail in law, for there seems to be no doubt under paragraph 422, Revised Statutes of 1913 (Civil Code), that appellants were entitled, as a matter of right, to file their amended answer any time before trial. The court's discretion to allow or refuse the filing of an amended pleading can only be exercised after the trial has begun. It is true that it often works a great inconvenience, and at times a hardship, on litigants to be served with an amended pleading on the eve of trial, but this fault in trial court procedure is one that only the law-making power can remedy.

In view of the disposition we have been compelled to make of the respective appeals, it is unnecessary to discuss the other assignments.

The judgment against McLean & Walsh, a partnership composed of Neal McLean and William D. Walsh, and Neal McLean and William D. Walsh as individuals, is reversed, and the cause remanded for a new trial.

ROSS, C. J., and FLANIGAN, J., concur.